IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**SAMUEL W. DRINKARD**
Plaintiff Pro se,

v

**MARK INCH, SECRETARY FL. D.O.C.,**
**LIEUTENANT PHILLIPS,**
**LIEUTENANT JOHN DOE,**
**SERGEANT A. RODRIGUEZ,**
**OFFICER SANTIAGO,**
**OFFICER JOHN DOE,**
**NURSE JANE DOE,**
Defendants.

_____/

*COMPLAINT*

Civil Action No.: _

5:21-cv-220-JLB-PRL

2021 APR 20   PM 1:02

FILED

## I. JURISDICTION & VENUE

1) This is a civil action authorized by 42 U.S.C. §1983 to redress the deprivation,

under color of state law, of rights secured by the constitution of the United States.

This Court has jurisdiction under 28 U.S.C. §1331 and 1343(a)(3). Plaintiff seeks

declaratory relief pursuant to 28 U.S.C. §2201 and 2202. Plaintiff claims for

injunctive relief are authorized by 28 U.S.C. §2283 and 2284 and Rule 65 of the

Federal Rules of Civil Procedure. This court has supplemental jurisdiction over

Plaintiff's state law tort claims under 28 U.S.C. §1367.

1

2) The Middle District of Florida, Ocala Division is an appropriate venue under 28 U.S.C. §1391(b)(2) because it is where the events giving rise to these claims occurred.

## II. PARTIES

1) At all times mentioned herein, Plaintiff Samuel W. Drinkard is and was a prisoner of Florida Dept. of Corrections (Fl. D.O.C.), and is currently housed at Florida State Prison.

2) At all times mentioned herein, Defendant Secretary Mark Inch is and was employed by Fl. D.O.C. as Secretary of Fl. D.O.C. He is being sued in his official as well as his individual capacity.

3) At all times mentioned herein, Defendant Lieutenant Phillips is and was employed as a Lieutenant at Lake Correctional Institution (Lake C.I.). He is being sued in his official and individual capacity.

4) At all times mentioned herein, Defendant Lieutenant John Doe, whose name is at present unknown to Plaintiff, is and was employed as a Lieutenant at Lake C.I. He is being sued in his official and individual capacity.

5) At all times mentioned herein, Defendant Sergeant A. Rodriguez is and was employed as a Sergeant at Lake C.I. He is being sued in his official and individual capacity.

6) At all times mentioned herein, Defendant Officer Santiago is and was employed as

2

a Correctional Officer at Lake C.I. He is being sued in his official and individual capacity.

7) At all times mentioned herein, Defendant Officer John Doe, whose name is presently unknown to Plaintiff, is and was employed as a Correctional Officer at Lake C.I. He is being sued in his official and individual capacity.

8) At all times mentioned herein, Defendant Nurse Jane Doe, whose name is presently unknown to Plaintiff, is and was employed as a health care provider (possibly as a Registered Nurse, however Plaintiff is unsure of her title and/or position) at Lake C.I. in the Mental Health Unit. She is being sued in her official and individual capacity.

9) At all times mentioned herein, each of the above named Defendants acted under color of state law and knew the wrongful acts perpetrated by them were illegal and were carried out during the performance of their official duties.

10) At this time, Plaintiff has no further information on or about the above named Defendants regarding their specific duties or positions. All will be made clear to the Court at Discovery and Interrogatory phases of this action.

### III. FACTS

1) On Jan. 29, 2019, Plaintiff was physically beaten and verbally assaulted by Five (5) Correctional Officers while fully restrained in handcuffs and shackles without need or provocation.

3

2) This incident took place between 3 pm – 4 pm in the Mental Health Unit of Lake C.I. in the 2nd floor Treatment Room where there are no cameras to record illegal activities.

3) This incident took place at Lake C.I. where not so long ago someone captured a similar beating on video and posted it on Youtube.

4) After this beating Nurse Jane Doe failed in her sworn duties to administer adequate medical treatment, and falsified medical documents to make it appear Plaintiff had no injuries, when in fact Plaintiff had a broken rib, later confirmed by X-Ray, possible fractures to the ocular bones or orbital floor in his right eye, a 1 ½ inch gash/laceration above his left eye, a busted lip, severe bruising and abrasions to both knees, and severe abrasions to the inside of his thighs from being kicked in the testicles.

5) After Defendant Nurse Jane Doe cleaned the blood off Plaintiff's face and put a simple band aid over the gash above Plaintiff's left eye, he was sent back to his cell with no pain meds nor even an ice pack for the severe pain and swelling that was readily apparent to any lay person.

6) Plaintiff was seen the next morning by his psychiatrist Dr. Lechin (Plaintiff was in fact on self harm observation status (SHOS) during this whole incident), and her first words to him were, "oh my God! What happened?" and her expression was one of shock, so the damage and injuries she was looking at apparently "shocked

4

the conscience." After our session, which centered on my beating, she told Plaintiff that she was going to write an incident report, and scheduled Plaintiff to see the medical doctor for his serious injuries.

7) A couple days after the beating Plaintiff was given X-Rays of his rib and face which confirmed a broken rib, and possible fractures around his right eye.

8) Plaintiff was transferred to Dade Correctional Institution on Friday, Feb. 8, 2019, where upon my arrival there, my still visible injuries were photographed and Plaintiff wrote a statement regarding his injuries and stated that he was beaten at Lake C.I.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

On Feb. 11, 2019, Plaintiff filed an Emergency Grievance to the Secretary of Fl. D.O.C., and received a response dated 2/22/19 stating the issue was turned over to the Inspector General, thus satisfying the requirements under 42 U.S.C. §1997e(a) of the PLRA. (See attached Exhibit A)

## V. PREVIOUS LAWSUITS

Plaintiff has not initiated any other lawsuits in State or Federal Court involving any of the claims in the instant complaint, nor are any appeals to lawsuits pending in any State or Federal Court.

5

## VI. STATEMENT OF CLAIM

1) On Jan. 29, 2019, while housed in cell H5204 of the Mental Health Unit at Lake
   C.I., between 3 pm – 4 pm, the Warden and other administrative staff were
   conducting an inspection of the cells and unit. When they approached Plaintiff's
   cell, H5204, the Major ordered my SHOS blanket and mattress replaced. At this
   time Plaintiff began eating paint flakes and caulking which he had peeled from the
   walls and window because Plaintiff knew he was going to have to come out of his
   cell and he was scared and apprehensive, and trying to avoid any contact with
   staff as Plaintiff had just been "gassed" or sprayed with chemical agents 2 days
   prior to this.

2) Whereupon Plaintiff refused to "cuff up" until a mental health counselor came to
   his cell and assured him he was safe.

3) Plaintiff then submitted to handcuff procedures and shackles. Plaintiff was dressed
   only in a Mental health "shroud" or "modesty garment," Plaintiff was then taken
   to the second floor treatment room to be assessed by medical staff due to him
   ingesting the paint and caulking. During the trip to the 2nd Floor treatment room,
   Plaintiff was looking around for fixed position cameras, which he demanded
   footage from to be preserved in his grievance. Plaintiff requested this footage not
   only as proof he was uninjured prior to entering the treatment room, but also for
   identification purposes. Upon information and belief, it is common practice for

6

officers to remove their Velcro name tags to avoid identification, as is the case here.

4) Upon arrival at the second floor treatment room, there were Five (5) officers present. Once inside the treatment room Plaintiff was ordered to submit to a strip search. Whereupon Officer John Doe removed Plaintiff's handcuffs, and left the shackles on. Plaintiff then removed his shroud, and Officer Santiago performed the strip search, and upon its completion, threw the shroud in Plaintiff's face and said, "Get dressed Fuckboy".

5) Plaintiff then put his shroud on and was once again handcuffed, and told to sit on the exam table. The positions of all the officers are important, as the treatment room is small, so it is crowded in there. Defendant Lieutenant Phillips was sitting on a stool to my left, Defendant Sgt. A. Rodriguez was standing on the left side of Plaintiff, Defendant Officer John Doe was standing on Plaintiff's right, Defendant Officer Santiago was standing in front of Plaintiff, and Defendant Lieutenant John Doe was standing beside Defendant Lieutenant Phillips when Defendant Lieutenant John Doe said, "There are too many people in the hallway, they need to kick rocks so we can kick ass." Whereupon Defendant Lieutenant Phillips got up and said, "I got this, just chill", and he crossed the room in front of Plaintiff, and with his right hand punched Plaintiff in the mouth, which busted Plaintiff's lip, and continued to exit the room.

7

6) Upon information and belief these types of beatings are commonplace in the treatment room because all the people in the hallway vanished so they would not be witness to this malicious act.

7) Upon information and belief, Defendants Lieutenant Phillips and Lieutenant John Doe have repeatedly engaged in excessive force with inmates.

8) Next, Defendant Lieutenant John Doe also crossed in front of Plaintiff from left to right on his way out the door, but stopped and hit Plaintiff with his left fist on or about the right eye which instantly swelled shut and knocked Plaintiff down on the exam table. Plaintiff sat up and looked at Defendant Lieutenant John Doe who was holding up his left hand and said, "That was my left Fuckboy, you lucky it wasn't my right." Whereupon Defendant Officer Santiago said, "Nice left." Plaintiff noticed Defendant Lieutenant John Doe was a wearing a black wedding band on his ring finger before he left the room. He is short with blondish hair.

9) Whereupon the brutal and malicious mauling began. Once again Plaintiff was not combative, aggressive, nor breaking any prison rules when he was maliciously and sadistically attacked with evil intent and specifically to cause harm.

10) Defendant Sgt. A. Rodriguez and Officer John Doe began punching Plaintiff. Defendant Sgt A. Rodriguez hit Plaintiff on the left side of his face, and Defendant Officer John Doe hit Plaintiff on the right side of his face.

11) Plaintiff was then ordered to stand up, and was jerked to his feet by Defendants

Sgt. A. Rodriguez and Officer John Doe, and literally slammed to the floor by being tripped (remember Plaintiff was fully restrained in handcuffs and shackles) face first. Defendants Sgt. A. Rodriguez and Officer John Doe then began punching and kneeing Plaintiff in the torso. All Plaintiff could do was tense up and endure the mauling that was coming.

12) Defendant Officer Santiago then grabbed Plaintiff by the head and slammed his face into the concrete floor, causing the laceration over Plaintiff's left eye. Defendant Sgt. A. Rodriguez dropped his knee into Plaintiff's left side breaking Plaintiff's rib. Defendant Officer John Doe was punching Plaintiff in his torso and back. Defendants Sgt. A. Rodriguez and Officer John Doe continued  to hold Plaintiff down on the floor while Plaintiff at no time ever got aggressive or broke any prison rules.

13) Defendant Officer Santiago then walked behind Plaintiff and kicked him between the legs in the testicles and left abrasions on the inside of Plaintiff's thighs. This kick hurt Plaintiff bad, and then Defendant Officer Santiago said, "That's so you don't procreate Fuckboy."

14) Finally the beating stopped and Plaintiff was just being held down on the floor, bleeding, in severe pain, and in fear of his life. Plaintiff was suffering both physically and mentally due to the malicious and sadistic actions perpetrated by the Defendants.

9

15) After several minutes went by Defendants Sgt. A. Rodriguez and Officer John Doe jerked Plaintiff up to his feet, and Defendant Officer Santiago wiped the blood off Plaintiff's face half-heartledly as Defendant Nurse Jane Doe entered the treatment room. Defendant Lieutenant Phillips also entered with her. Upon information and belief Defendants Nurse Jane Doe and Lieutenant Phillips were conveniently detained while Plaintiff was being maliciously and sadistically beaten without need or provocation and knew these illegal acts were being committed.

16) Defendant Nurse Jane Doe ordered Plaintiff to sit on the exam table and proceeded to clean the blood off of Plaintiff's face and placed a simple band aid or steristrip on the 1 ½ inch gash over Plaintiff's left eye. She then documented in Plaintiff's medical chart, "No injuries noted," which is a direct violation of Chapter 33-208.002 (12 & 19) F.A.C. Falsifying records or documents is cause for written reprimand, suspension, demotion, or dismissal for first offense per Chap. 33-208 F.A.C.

17) Defendant Nurse Jane Doe then stated, "OK he's done, He can go." Whereupon Plaintiff was taken back to his cell without any pain meds or even an ice pack for the severe pain and swelling he was suffering from.

18) The next morning Plaintiff was taken to see his Psychiatrist, and upon seeing her she exclaimed in a shocked voice, "Oh My God, What happened?" Her name is

10

Dr. Lechin, and after our session, she told Plaintiff she was going to file an incident report with the administration. Plaintiff can't confirm this, but it should be made clear upon Discovery. Plaintiff was transferred to Dade C.I. on Feb. 8, 2019, and immediately upon arrival, photos were taken of Plaintiff's still visible injuries, and he wrote a statement saying his injuries were the result of getting beaten at Lake C.I. by Five (5) prison guards.

## VII. LEGAL CLAIMS

1) Plaintiff re-alleges and incorporates by reference all the foregoing paragraphs.

2) The use of excessive force by the above named Defendants in beating Plaintiff without need or provocation, in a malicious and sadistic manner, and not in a good faith effort to restore order and for no other legitimate penalogical reason except for the unnecessary and wanton infliction of pain, violated Plaintiff's rights and constituted cruel and unusual punishment under the 8th Amendment of the United States Constitution.

3) The Wrongful acts of Defendants Mark Inch, Lieutenant Phillips, Lieutenant John Doe, and Sgt. A. Rodriguez in failing to prevent the excessive use of force, which was without need or provocation, and of a sort repugnant to the conscience of mankind, were done and carried out in a malicious and sadistic manner for no legitimate penalogical interest other than for the unnecessary and wanton infliction of harm, and not in a good faith effort to restore order or discipline, and

11

fell shockingly below the contemporary standards of decency of a maturing society. These illegal acts against Plaintiff by the above named Defendants, during the performance of their official duties constitutes deliberate indifference, a violation of the 8th Amendment of the U.S. Constitution, and the state law tort of negligence. As supervisors in all aspects of the word, the above named Defendants acted under color of state law and failed in their duty to protect Plaintiff from the substantial risk of serious harm, as they knew their failure to prevent the malicious and sadistic mauling inflicted upon the Plaintiff would result in serious injury, thus proving a culpable state of mind.

4) The wrongful acts of Defendants Lieutenant Phillips, Lieutenant John Doe, Sgt. A. Rodriguez, Officer Santiago, and Officer John Doe in using excessive force on Plaintiff in a malicious and sadistic manner without need or provocation in the unnecessary and wanton infliction of pain upon Plaintiff that served no legitimate penalogical purpose, and was not done in a good faith effort to restore or maintain order constitutes the state law torts of assault and battery.

5) The intentional infliction of mental, emotional, and psychological distress that Plaintiff will continue to suffer from is a direct and proximate result of the cruel and unusual punishment inflicted upon him on 1/29/19, a day Plaintiff will never forget. This was an intentional act and as such shows culpability by the Defendants. Plaintiff will continue to be irreparably traumatized by the cowardly

12

and wanton acts perpetrated by the Defendants. The intentional infliction of
mental, emotional and psychological distress is a violation of the state tort laws of
Florida.

6) The wrongful actions and omissions of Defendant Nurse Jane Doe in deliberately
refusing Plaintiff medical treatment for his serious injuries and falsifying
documents constitutes deliberate indifference and negligence in violation of the 8th
Amendment and the laws of the state of Florida.

7) At all times mentioned herein, all of the above named Defendant's acted under
color of state law and knew their actions were illegal. The excessive force used on
Plaintiff by the above named Defendant's was deliberate and wanton and was in
no way needed. It was malicious and sadistic and served no legitimate penalogical
purpose except to instill fear, paranoia, anxiety, and nightmares, and to directly
cause harm and inflict pain. Plaintiff will be forever haunted by nightmares and
paranoia as a direct and proximate result of this incident.

8) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs
described herein. Plaintiff has been and will continue to be irreparably injured by
the unnecessary and wanton acts committed by the Defendants unless this Court
grants the declaratory and injunctive relief which Plaintiff seeks, as well as
damages such as a jury Trial will render.

13

## VIII. INJURIES

1) The injuries Plaintiff sustained in this incident are a direct and proximate result of the excessive use of force by the above named Defendants on 1/29/19, and were maliciously and sadistically caused by the Defendant's wanton and reckless disregard for Plaintiff's rights. The injuries served no legitimate penalogical purpose, and Plaintiff will continue to suffer from and be irreparably injured due to the Defendant's wrongful actions on 1/29/19, a day Plaintiff will never forget.

2) Plaintiff's injuries consist(ed) of :

   A) A broken rib, confirmed by X-ray,

   B) A 1 ½ inch gash/laceration over his left eye,

   C) Severe bruising and swelling of his right eye due to possible fractures in the orbital floor of the right eye, also identified by X-ray,

   D) Severe bruising and abrasions to both knees,

   E) A busted lip,

   F) Severe pain in his testicles, and abrasions to the inside of this thighs,

   G) Nightmares, anxiety, paranoia, debilitating sleep loss, and mental and emotional distress.

3) Plaintiff is permanently scarred physically, mentally and emotionally due to the Defendant's wrongful actions on 1/29/19.

14

4) While these injuries may not seem to the Court to rise to the level of "serious medical need," Plaintiff would like to point out that the pain involved with any broken rib severely limits one's range of daily activities. Just taking a deep breath is extremely painful. The pain is constant and long term as it takes several months for a broken rib to heal completely. The denial of pain medication by the defendant Nurse Jane Doe created an unquestionable and undeniable level of discomfort and unavoidable pain that directly and proximately, resulted in a severe decrease in Plaintiff's daily activities, and an unnecessary and wanton infliction of pain that should have been negated by the administration of pain meds.

5) The laceration above Plaintiff's left eye left a permanent scar that will forever remind Plaintiff of the malicious and sadistic actions of the Defendants in the unnecessary and wanton infliction of pain upon the Plaintiff.

6) Plaintiff's right eye was swollen shut as a direct and proximate result of Defendant Lieutenant John Doe's "left hand" punch and he could not see out of his right eye for a week. The pain associated with this injury was significant and real, and lasted for weeks until the eye healed.

7) The excruciating pain Plaintiff experienced in his testicles should need no explanation to the Court.

8) The mental, psychological, and emotional injuries Plaintiff continues to suffer

from are actually getting worse. Nightmares plague Plaintiff every night. Plaintiff awakes in cold sweats, with labored breathing and tremors. As a direct and proximate result of the wrongful and illegal acts of the Defendants, Plaintiff suffers from extreme paranoia of all D.O.C. staff, now coupled with anxiety and severe tension. The level of fear is palpable and real. Plaintiff will never be able to trust any D.O.C. employee again.

9) When Plaintiff sees his psychologist they ask him how often or how long he sleeps. The answer is always "very little, at most on a good night, maybe 2 or 3 hours." Sleep loss is a direct and proximate result of the nightmares and bad dreams of that beating Plaintiff received on 1/29/19. Sleep is a necessary part of anyone's life to help us function normally. Plaintiff's "normal" prison life has been irreparably damaged by the malicious and sadistic actions of the Defendants.

## IX. PRAYER AND RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment granting Plaintiff:

1) A declaration that the acts and omissions described herein violated Plaintiff's rights under the U.S. Constitution and laws of the United States.

2) A preliminary and permanent injunction ordering Defendants Mark Inch, Lieutenant Phillips, Lieutenant John Doe, and Sgt A. Rodriguez to stop allowing the guard brutality and cruel & unusual punishment of defenseless inmates to

16

occur under their watch.

3) A further preliminary and permanent injunction ordering Defendant Nurse Jane Doe to stop aiding and abetting illegal beatings in the performance of her official duties.

4) Yet still another preliminary and permanent injunction ordering Defendant Mark Inch to install fixed position video cameras in each and every doctors office or treatment room to capture any illegal acts committed therein.

5) Compensatory damages in the amount of $75,000.00 against each Defendant, jointly, and severally.

6) Punitive damages in the amount of $75,000.00 against each Defendant, jointly, and severally.

7) A jury Trial on all issues triable by jury.

8) Plaintiff's costs in this case including but not limited to all court costs, filing fees, lawyer fees, liens, and also preventing Fl. D.O.C. from placing a lien on Plaintiff's account for room and board.

9) Any additional relief this Court deems just, proper, and equitable.

Dated _4 / 15 / 21_____

Respectfully Submitted,

/s/

SAMUEL DRINKARD
DC#S13683
Florida State Prison – Main Unit
P.O. Box 800
Raiford, Florida 32083

## X. VERIFICATION

I, Samuel W. Drinkard have read the foregoing complaint and hereby verify that

the matters alleged herein are true and correct, except as to matters alleged on

information and belief, and as to those, I believe them to be true. I do hereby certify

under penalty of perjury that the foregoing document is true and correct.


Executed at _F. S. P._

on _4 / 15 / 21_

/s/

SAMUEL DRINKARD

EX14-B14-19

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED

FEB 19 2019

Department of Corrections
Inmate Grievance Appeals

☐ Third Party Grievance Alleging Sexual Abuse

TO: ☐ Warden     ☐ Assistant Warden     ☑ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

| Drinkard | Samuel | W | S13683 | Dade |
|---|---|---|---|---|
| Last | First | Middle Initial | DC Number | Institution |

A-6-071616

### EMERGENCY    Part A – Inmate Grievance    GRIEVANCE

On Tuesday, Jan. 29th, 2019, I was physically assaulted and beaten at Lake C.I., by several different officers, in the 2nd floor Treatment Room of the mental health unit. Lieutenant Phillips; another Lieutenant, who is short (approx. 5'6" or 5'7"), has blonde hair, and wears a black wedding band ring on his left hand ring finger; Sgt. A. Rodriguez; Officer Santiago; and another unidentified officer was involved in this incident. I hereby demand preservation of the video camera footage from the second floor hallway cameras which show me being taken, while handcuffed and shackled to the 2nd floor treatment room, between the time of 3pm – 4pm, for evidence and identification purposes in future litigation. This was a totally unnecessary and unwarranted use of excessive force and assault and battery of an aggravated nature. This grievance is being filed in good faith pursuant to Ch. 33-103, and within the time frames set forth therein. I am in fear of my life from these officers and the administration at Lake C.I. It is my intent and purpose to file full criminal charges as well as civil action on these officers in both official as well as individual capacity.

| 2/10/19 | Sign DSD S13683 |
|---|---|
| DATE | SIGNATURE OF GRIEVANT AND D.C. # |

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**          0 / ____

Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

Receipt for Appeal Being Forwarded to Central Office

(403) NF DF    10a

M. St.Clair

| Submitted by the inmate on: | 2.11.19 | Institutional Mailing Log #: | 14850 | (Received By) |
|---|---|---|---|---|

Rodliguez
Ofc. Santia'

907556

909193

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|---|
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

DC1-303 (Effective 11/13)        Incorporated by Reference in Rule 33-103.006, F.A.C.

Exhibit A

# EMERGENCY GRIEVANCE
## CONTINUED

On Wednesday, Jan. 30th, 2019, I informed Doctor Lechin, who was my psych doctor, about the incident, and she was supposed to file an incident report with the Lake CI administration. I cannot confirm this for a fact, but this is what she told me she was going to do. She informed me that an investigation would occur and that I would be interviewed, but that has yet to occur.

My injuries include: broken ribs confirmed by X-ray, possible broken bones around my eye, as yet to be confirmed by pending CT scan ordered by the black male doctor at Lake CI, a gash above my left eye, severe bruising of my right eye, and abrasions and bruising of both knees; mental trauma and severe anxiety coupled with fear for my life and safety.

This incident has been documented and photos taken of my facial injuries were made at Dade CI upon my arrival here after emergency transfer from Lake CI on Friday, Feb. 8th, 2019.

## RELIEF SOUGHT:

I want these men fired and criminal charges filed. I also do not want to go back to Lake CI for fear of retaliation and my life.

2/10/19                                    S13653

Exhibit A

WITH AGENCY CLERK

FEB 2.2 .2019

**PART B - RESPONSE**

Department of Corrections
Bureau of Inmate Grievance Appeals

| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |
|---|---|---|---|---|
| DRINKARD, SAMUEL | 513683 | 19-6-07166 | DADE C.I. | J2101S |

Note: This grievance is not accepted as a grievance of an emergency nature.

Your appeal has been reviewed and evaluated. The subject of your grievance was previously referred to the Office of the Inspector General. It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview with you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.

If you feel you need medical attention, contact the institutional medical department via the sick call/emergency process.

The grievance/appeal process is not to be utilized for correspondence purposes.

Please be advised, the grievance process is not to be utilized to ask questions, seek information, guidance or assistance.

You are advised that it is not within an inmate's scope of responsibility or authority to recommend disciplinary action regarding staff.

As this process was initiated prior to the receipt of your appeal, your request for action by this office is denied.

S. Milliken

_S. Milliken._

2/20/19

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

Florida State Prison
Po Box 800
Raiford Fl. 32083

Mailed From A State
Correctional Institution



U.S. POSTAGE >> PITNEY BOWES

ZIP 32083 $ 009.05⁰
02 4W
0000357048 APR 19 2021




U.S. POSTAGE PAID
PM 2-Day
RAIFORD, FL
32083
APR 19 21
AMOUNT
1004          34475          $0.00
R2306Y152030-02

**LEGAL MAIL**

U.S. District Court
Office of the Clerk
Golden - Collum memorial Federal Building
and U.S. Courthouse
207 N.W. 2nd St.  Room 337
Ocala Fl. 34475 - 6666

**SCREENED
By USMS**



EXPECTED DELIVERY DAY: 04/22/21
USPS TRACKING® #

9505 5166 3086 1109 0929 52